J. R. GRIFFITH v. B. J. BERGESON, Appellant.

Recovery of Profits: EXCESSIVE ALLOWANCE BY INSTRUCTION. Plaintiff and another contracted for the purchase of about 300 unselected and unidentified steers on a ranch, or all the steers of certain ages belonging to sellers, of which 20 head might ' be cut out as "tails" by the purchasers, to be delivered on a certain date. Plaintiff contracted for the sale of his one-half of the steers, but was unable to fulfill his contract, because of the failure ,to deliver the 300 steers, and the delivery of steers inferior to those contracted for, and sued his co-purchaser for damages, alleging a faudulent conspiracy on the part of defendant the sellers. The evidence showed that at the time of the delivery the seller might have had about 270 steers, leaving plaintiff entitled, after cutting out the 20 tails, to one-half of 250 steers. *Held*, that an instruction authorizing the recovery of profits on 164 head of cattle was erroneous, for it was more than his one-half.

CHARGE AND EVIDENCE. There being a conflict in the evidence as to whether any steers were withheld, and as to the number, if any, the instruction was erroneous in directing a recovery of profits for a specified number, regardless of the evidence, as, under the issue tendered, no recovery could be had for profits on a greater number than the evidence showed were in fact withheld.

EVIDENCE: *Measure of damages*. It not appearing that there was any contract for the resale of plaintiff's interest in the cattle which could have been enforced, evidence of such resale is only competent as tending to prove the market value of the stock at that time.

Partnership: OTHER CONFIDENTIAL RELATIONS: *Good faith required*. An instruction giving the rule as to good faith between partners, though technically incorrect, because there was no partnership between plaintiff and defendant, was not erroneous, for the rule it embodied was applicable to the relation of the parties.

ESTOPPEL TO URGE FRAUD. Though plaintiff suspected some fraud at the time the stock was delivered, as he did not certainly know what it was, and the extent thereof, he is not estopped to complain.

*Appeal from Emmet District Court.—*HON. W. B. QUAR-
TON, Judge.

SATURDAY, DECEMBER 21, 1901.

ACTION at law to recover damages alleged to have been
caused by the fraudulent conspiracy of the defendant and
others. Trial to a jury, and verdict and judgment for the
plaintiff, from which the defendant appeals.—*Reversed.*

*Myerly & Bevan* for appellant.

*C. W. Crim* for appellee.

SHERWIN, J.—On the fourteenth day of July, 1899,
the plaintiff and defendant jointly entered into a contract
with the firm of Whitlock & Boehmer, by the terms of which
Whitlock & Boehmer agreed to sell them "about three
hundred head of steers," and about 50 cows and
heifers, to be delivered between the first and tenth
of October. The contract says, "It being the intention that
this contract shall cover all cattle to be sold by Whitlock &
Boehmer,—about 350 head, more or less." At the time
this contract was made, the cattle covered by it were in a
herd about 35 miles from Gettysburg, S. D., with a large
number of others. They were not picked out or indentified
in any manner, but the evidence shows that the contract
was intended to cover and include all two, three, and four
year old steers then owned by Whitlock & Boehmer on
that range. When the delivery was made to the plaintiff
and the defendant at Gettysburg, but 230 steers were in
the bunch, and the plaintiff claims that they were not the
same or as good as the ones contracted for; that the herd
had been "topped" (that is, that the best cattle had been
picked out, and only the inferior ones delivered to the
parties to this action). He also alleges other fraudulent

practices on the part of Whitlock & Boehmer, to all of which he claims that this defendant was a party, and sues him alone for the damage he avers he has sustained by reason thereof.

The plaintiff proved that after he had contracted for the cattle in question, he, in turn, made contracts for the sale of one-half thereof,—the cattle which would belong to him under his arrangement with the defendant. The court gave the following instruction on that point: "Now, if you believe from the evidence that, before the time of delivery of the cattle in question by Whitlock & Boehmer to Griffith & Bergeson, the defendant knew that the plaintiff had sold 100 head of the cattle in question to each of the above named parties; and if you further believe from the evidence that through the fraud of the defendant, or through his conspiring with others to cheat and defraud the plaintiff out of any part of the cattle in question; and you further find that in fact, through said fraud or conspiracy, the plaintiff did not get any part or all of the cattle purchased; and you further find that on account of said fraud or conspiracy the plaintiff was deprived of the sale of these cattle, or any part thereof, to Eisle and Wells,—then you are told that the plaintiff would be entitled to recover of and from the defendant at the rate of $2.50 per head for 64 head of cattle, which was the number not delivered to Eisle, and at the rate of 20 cents per hundredweight for one hundred head, which were not delivered to Wells, as you find the weights of said cattle to be delivered to Wells, to have actually been at Gettysburg, South Dakota, on the 11th day of October, 1899." This instruction is clearly erroneous. It authorizes the plaintiff to recover the profits on 164 head of steers, when, under the undisputed agreement with the defendant, he was to have but 150 head of steers if they got the full number, 300. Moreover, the contract is very indefinite as to the number which the plaintiff and defendant could claim thereunder. It provides for

no certain number, but does provide that 20 head may be cut out by the purchasers as "tails." The number of two, three, and four year old steers in the herd at the time of the purchase was not exactly known (they were not counted), and the only evidence relating therto is the testimony of the plaintiff that he estimated that there might be 325 ; but, under the contract, it is doubtful if Whitlock & Boehmer could have been required to furnish more than 300 if they had had them; and if we construe the contract as requiring them to deliver all they had at the time, up to 300 in number, the evidence only shows that they might have had 270 head at that time, so that in any event, under the contract and the evidence, after cutting out the 20 tails, the plaintiff would only be entitled to one-half of 250 steers. Again, there is a conflict in the evidence as to whether any steers were withheld, and as to the number, if any. Under the issue tendered, no recovery could be had for profits on a greater number than the evidence showed were in fact withheld, while the instruction directs a recovery for a specified number, regardless of the evidence.

It is said that the instruction we have just noticed and instruction 13 are conflicting. This is true, to a certain extent, though it is evident that such was not the intent of the court. As both read, the jurors might be somewhat confused. This difficulty, however, may be readily removed on a retrial.

Paragraph 11 of the court's charge is technically incorrect, for the reason that there was no partnership between the plaintiff and the defendant; but the rule which it gives is applicable to the relation of the parties, and hence it is not erroneous.

We need not notice specifically other errors assigned as to instructions, or errors assigned as to rulings on the

introduction of testimony, except as. to the evidence of a resale of the cattle by the plaintiff. There does not appear to have been any contract for a resale which could have been enforced, and this evidence is only competent as tending to prove the market value of the stock at that time. Other errors complained of are not likely to arise on a retrial of the case, and, we do not notice them. It is contended that the verdict is not supported by the evidence. The facts and circumstances shown are of such character that we cannot so say, as a matter of law.

An estoppel is urged on the ground that the plaintiff received the stock when delivered, knowing all of the facts upon which he now relies for a recovery against the defendant. But this does not appear conclusively from the record. That he suspected some chicanery in the transaction is beyond dispute, but just what it was, and the extent thereof, he evidently did not know certainly at the time.

For the errors pointed out, the judgment is REVERSED.